UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE 4,<br><br>              Plaintiff,<br><br>   v.<br><br>DARREN K. INDYKE and RICHARD D. KAHN, in their capacities as the executors of the ESTATE OF JEFFREY EDWARD EPSTEIN,<br><br>              Defendants. | **COMPLAINT**<br><br>JURY TRIAL DEMANDED<br><br>Case No.: |

**COMPLAINT**

Plaintiff, Jane Doe,[1] by and through her undersigned counsel, brings this complaint against Defendants Darren K. Indyke and Richard D. Kahn in their capacities as the executors of the Estate of Jeffrey Edward Epstein ("Epstein"), and avers upon personal knowledge as to her own acts and status and upon information and belief and to all other matters as follows:

**NATURE OF THE ACTION**

1. This suit arises out of Jeffrey Epstein's sexual assault and battery, sexual abuse, and sex trafficking of Jane Doe.

2. Jane Doe was abused and trafficked by Epstein as part of his organized ring of procuring young and underage girls for sex. Epstein manipulated and intimidated Doe and subjected her to years of sexual abuse in New York and elsewhere, including internationally.

---

[1] Plaintiff is using the pseudonym "Jane Doe" in this Complaint in place of her real name. Plaintiff intends to file a motion to proceed anonymously to protect her privacy because her allegations concern sexual abuse, and the disclosure of her name in conjunction with the allegations would cause her further harm.

1

3. Epstein's sex-trafficking scheme involved recruiting young females by making false promises and using his wealth, power, and threats to intimidate the females into submission to his demands. This same pattern was repeated numerous times with numerous young women.

4. As United States District Judge Kenneth Marra found: "From between about 1999 and 2007, Jeffrey Epstein sexually abused more than 30 minor girls . . . at his mansion in Palm Beach Florida, and elsewhere in the United States and overseas . . . In addition to his own sexual abuse of the victims, Epstein directed other persons to abuse the girls sexually. Epstein used paid employees to find and bring minor girls to him. Epstein worked in concert with others to obtain minors not only for his own sexual gratification, but also for the sexual gratification of others." *Doe 1 v. United States*, 359 F. Supp. 3d 1201, 1204 (S.D. Fla. 2019) (internal citations omitted).

5. Epstein organized this sex-trafficking network to obtain young females for himself for sex and lent these females out to other powerful and wealthy individuals to be sexually abused.

6. Epstein conspired with others and hired staff to maintain and keep secret this network of sexual abuse for years, which sprawled throughout Epstein's residences in New York, Florida, New Mexico, the United States Virgin Islands, and Paris. Epstein's preference was to have three different young females a day for his sexual pleasure.

7. Despite his significant criminal activity, in 2008 Epstein received a shockingly minimal charge pleading guilty to a single Florida state law charge of procuring a minor for prostitution and a non-prosecution agreement ("NPA") with the U.S. Attorney for the Southern District of Florida. Unknown to the public and the victims at the time, Epstein's lawyers were pressuring the government to commit to the NPA without informing the victims. Epstein's multiple victims were kept in the dark and told to be "patient" while Epstein's lawyers worked to protect him and other potential co-conspirators from prosecution. Epstein served one year in jail,

but was afforded the privilege of being able to leave the jail to go to work for twelve hours per day, six days per week.

8. The NPA allowed Epstein to escape proportionate punishment for his actions and to continue operating his sex-trafficking enterprise with liberty.

9. A few years later, Epstein flippantly referred to his sexual abuse of multiple minors, and the slap on the wrist he had received for it, in a 2011 interview with the *New York Post*: "Billionaire pervert Jeffrey Epstein is back in New York City – and making wisecracks about his just-ended jail stint for having sex with an underage girl. 'I am not a sexual predator, I'm an offender,' the financier told The Post yesterday. 'It's the difference between a murderer and a person who steals a bagel,' said Epstein." Amber Sutherland, *Billionaire Jeffrey Epstein: I'm a Sex Offender Not a Predator*, N.Y. Post (Feb. 25, 2011), https://nypost.com/2011/02/25/billionaire-jeffrey-epstein-im-a-sex-offender-not-a-predator/.

10. In August 2018, just one year before his death, Epstein told a *New York Times* reporter "that criminalizing sex with teenage girls was a cultural aberration and that at times in history it was perfectly acceptable." James B. Stewart, *The Day Jeffrey Epstein Told Me He Had Dirt on Powerful People*, N.Y. Times (Aug. 12, 2019), https://www.nytimes.com/2019/08/12/business/jeffrey-epstein-interview.html.

11. The specter of Epstein continues to loom large as investigation into Epstein's crimes and co-conspirators dominates news headlines worldwide. *See, e.g.*, Press Release, House Committee on Oversight and Government Reform (Sep. 6, 2025), https://oversight.house.gov/release/oversight-committee-releases-epstein-records-provided-by-the-department-of-justice/. In a July 6, 2025 memorandum published by the Department of Justice and Federal Bureau of Investigation, the U.S. Government stated that "Epstein harmed over one

thousand victims." *See United States v. Epstein*, 1:19-cr-00490-RMB, Dkt. 63 at 4 (citing DOJ & FBI Memo. at 1). In declining to unseal grand jury materials from Epstein's federal criminal case, Judge Berman found that "possible threats to victims' safety and privacy" was a "compelling reason" for denying the Government's request. *See id.*, Dkt. 77 at 8.

12. When Jane Doe was a young woman, Epstein added her to his long list of victims by committing sexual assault and battery against her. As such, Epstein is responsible for battery and intentional infliction of emotional distress pursuant to New York common law. The damage to Doe has been severe and lasting.

## PARTIES

13. Plaintiff Jane Doe is a citizen of a country in Central Asia.

14. At relevant times, she was abused in the State of New York and Paris, France.

15. Doe is using a pseudonym to protect her identity because of the sensitive and highly personal nature of this matter, which involves sexual assault.

16. Doe is also at serious risk of retaliatory harm because the co-conspirators who participated in the Epstein sex-trafficking enterprise had—and continue to possess—tremendous wealth and power and have demonstrated a clear ability to cause her serious harm.

17. Doe also faces a serious risk of retaliatory harm and persecution because of the country she resides in.

18. Doe's safety, right to privacy, and security outweigh the public interest in her identification.

19. Defendant Darren K. Indyke is sued in his capacity as an appointed executor of the Estate of Jeffrey E. Epstein.

20. Defendant Richard D. Kahn is sued in his capacity as an appointed executor of the Estate of Jeffrey E. Epstein.

## JURISDICTION, VENUE, AND TIMELINESS

21. This action is brought pursuant to various federal and state statutes, including the federal Trafficking Victims Protection Act, 18 U.S.C. § 1589 through § 1595 ("TVPA"). This Court has federal question subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because Doe is proceeding under the federal TVPA statute.

22. This Court also has supplemental jurisdiction over the state law claims recounted below pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein are part of a uniform pattern and practice and form part of the same case or controversy.

23. This Court is "an appropriate district court of the United States" in accordance with 18 U.S.C. § 1595, in which to bring this action. Venue is proper in this District under 28 U.S.C. § 1391(b)(2), because a substantial part of the acts, events, and omissions giving rise to this cause of action occurred in this District, including Epstein's sexual abuse of Doe, which occurred in New York, New York, where he recruited her, physically molested her, and groomed her for sex in his organized sex trafficking ring.

24. Epstein was a citizen of the United States domiciled in the U.S. Virgin Islands at the time of his death. Epstein maintained a residence in New York County. As the legal representatives of the Estate of Jeffrey E. Epstein, Darren K. Indyke and Richard D. Kahn are deemed citizens of the U.S. Virgin Islands.

25. This action is timely under the federal TVPA. Section 1595(c) (1) provides that:

No action may be maintained under subsection (a) unless it is commenced not later than the later of (1) 10 years after the cause of action arose; or (2) 10 years after the victim reaches 18 years of age, if the victim was a minor at the time of the alleged offense.

18 U.S.C. § 1595.

26. Any statute of limitations applicable to Doe's claims, if any, is tolled due to the continuous and active deception, duress, threats of retaliation, and other forms of misconduct that Epstein and his co-conspirators used to silence his many victims, including Doe. Epstein's actions deprived Doe of the opportunity to commence this lawsuit before his death.

27. Defendants are equitably estopped from asserting a statute of limitations defense. Allowing Defendants to do so would be unjust. Epstein and his co-conspirators intimidated each of his victims, including Doe, into silence by threatening their lives and their livelihoods. They therefore prevented Doe from commencing this lawsuit before his death. By using threats, along with his wealth and power, Epstein was able to escape punishment for his intolerable and brutal crimes against countless young women and underage girls.

## FACTUAL ALLEGATIONS

### A. Epstein's Sex Trafficking Enterprise

28. Epstein was widely renowned as a billionaire who used his vast connections to powerful individuals, and seemingly unlimited wealth and resources, to create a web of transcontinental sex trafficking that served himself, his co-conspirators, and some of the most powerful people in the world.

29. Epstein's sex-trafficking enterprise operated in many respects as a sex-themed cult designed to ensnare vulnerable young women and indoctrinate them into Epstein's carefully constructed world in which Epstein was their messiah and sex abuser.

30. Once in Epstein's clutches, each victim was taught and understood that she must be completely compliant with every wish or demand Epstein had for her; otherwise, she would certainly suffer serious reputational, financial, and psychological harm. By using these and other

6

means of force, threats of force, fraud, threats of abuse of the legal process and coercion, Epstein sexually trafficked and sexually abused Doe.

31. Epstein owned multiple residences and frequently traveled between them, including at 9 East 71st Street, New York, New York, 10021, where illegal sexual crimes against Doe occurred. Epstein conservatively valued his New York townhome at $55,931,000.00. Epstein conservatively valued his ranch at 49 Zorro Ranch Road, Stanley, New Mexico, 87056, at $17,246,208.00. In addition, Epstein owned residences in the United States Virgin Islands, Florida, France, and even on his own island, Great St. James Island, where his transcontinental sex trafficking of hundreds of young girls servicing him, his co-conspirators, and wealthy and powerful individuals around the world occurred. At Epstein's bail hearing on July 24, 2019, based on claims that Epstein made to his financial institutions at the time, the government stated that Epstein's net worth was $500 million.

32. Epstein also maintained numerous apartment units at 301 East 66th Street in New York City, where Epstein's co-conspirators often stayed and which operated as stash houses where numerous victims were kept over the years.

33. The allegations herein concern Epstein's tortious acts against Doe while in New York, as well as in Paris, France.

34. At all times material to this cause of action, Epstein utilized his seemingly unlimited power, wealth, and resources, as well as his deep connections to powerful and politically connected individuals to intimidate and manipulate his victims of sexual abuse.

35. Epstein and his co-conspirators had perfected a scheme for manipulation and abuse of young females. As part of the scheme, a female "recruiter" would approach a young female and strike up a conversation in an effort to quickly learn about the young female's background and

any vulnerabilities they could expose. The recruiter would then manipulate the young female into coming back to one of Epstein's residences by offering the young female something she needed. At times the recruiter's lure would be a modeling opportunity, money for education, career opportunities, help for the young female's family, and a whole host of other related offers depending on their target's situation. Once in the residence, the recruiter and Epstein would work in concert to impress and intimidate the young female with displays of vast wealth, including having employees that were butlers and maids formally dressed around the house. They would also strategically place photographs of very powerful political and social figures amongst photographs and art displaying nude females in an effort to normalize the sexual abuse. They would also normalize the sexual abuse by placing a massage table and spa related products around the massage area in an effort to legitimize the area where the abuse was set to occur. Once abused, Epstein and his co-conspirators continued to manipulate the victims, using their financial power, promises, and threats to ensure that the victim returned as directed and remained compliant with their demands.

36. Epstein's victims were young women and girls, who suffered severe abuse as Epstein's sex trafficking victims and who believed they had to remain loyal to the venture at all costs in order to survive. At all times relevant to this action, Epstein victimized hundreds of young women and girls.

B. **The Arrest, Prosecution, and Death of Epstein**

37. The sex trafficking ring described herein started at least as early as 1995 and continued up until at least July 2, 2019, when the U.S. Attorney's Office for the Southern District of New York indicted Epstein with sex trafficking conspiracy and sex trafficking in violation of 18 U.S.C. § 1591. The indictment described Epstein's conduct and his abuse and trafficking of females in the same trafficking operation he used to abuse and traffic Doe.

38. On July 8, 2019, Epstein was arrested pursuant to the New York indictment.

39. Epstein's last will and testament ("Will") was executed on August 8, 2019, at the Metropolitan Correctional Center. The witnesses were Mariel Colón Miró and Gulnora Tali. The Will included affidavits from Darren K. Indyke and Richard D. Kahn, in which they swear an "Oath of Willingness to Serve as Executor and Appointment of Local Counsel."

40. Epstein was found dead in his cell at the Metropolitan Correctional Center on August 10, 2019.

41. The Will was filed on August 15, 2019, in the Probate Division of the Superior Court of the Virgin Islands.

42. Darren K. Indyke and Richard D. Kahn filed a Certificate of Trust in the Superior Court of the Virgin Islands for Epstein's 1953 Trust on August 26, 2019. *See* Certificate of Trust, *In the Matter of the Estate of Jeffrey E. Epstein*, Probate No. ST-19-PB-80 (Super. Ct. V.I. Aug. 26, 2019).

43. The Will was entered into probate on September 6, 2019, and the Superior Court of the Virgin Islands accordingly authorized Darren K. Indyke and Richard D. Kahn to administer Epstein's estate. *See* Order for Probate, *In the Matter of the Estate of Jeffrey E. Epstein*, Probate No. ST-19-PB-80 (Super. Ct. V.I. Sept. 6, 2019); Letters Testamentary, *In the Matter of the Estate of Jeffrey E. Epstein*, Probate No. ST-19-PB-80 (Super. Ct. V.I. Sept. 6, 2019).

44. The Will's first article directs Epstein's executors "to pay from my estate all expenses of my last illness, my funeral and burial expenses, the administration expenses of my estate and all of my debts duly proven and allowed against my estate." The Will further directs that "after the payments and distributions provided in Article FIRST," Epstein "give[s] all of my property, real and personal, wherever situated … to the then acting Trustees of The 1953 Trust."

### C. Jane Doe 4

45. In approximately 2010, in New York City, Epstein recruited Doe, a young student, to "massage" him. She was required to do so on a repeated basis. During many of the massages Epstein sexually abused or assaulted Doe.

46. When Epstein assaulted Doe for the first time, it was her first sexual experience.

47. Epstein paid Doe in cash for the "massages" she performed.

48. Epstein made comments about Doe's body and complimented her because she looked underage.

49. After Doe returned to her home country in 2011, Epstein maintained contact with her through email and Skype, requesting sexually explicit photos.

50. In 2011, Doe and Epstein met in Paris.

51. In approximately 2014, Epstein assisted Doe in the acquisition of a French visa and booked her flights to travel to and from France.

52. Epstein financed a stay for Doe, including housing in one of his apartments and tuition at a school in Paris. Epstein also arranged for a driver to transport Doe around Paris.

53. In 2015, Epstein sexually assaulted Doe while she was in Paris.

54. Doe has been incredibly traumatized and fearful as a result of the abuse she suffered at the hands of Epstein and continues to be afraid of his co-conspirators who helped him facilitate these crimes.

### FIRST CAUSE OF ACTION

### (Participating in a Sex-Trafficking Venture in Violation of the Trafficking Victims Protection Act, 18 U.S.C. §§ 1591 (a)(1), 1595)

55. Doe repeats and re-alleges the allegations stated above in paragraphs 1–54 as if fully set forth herein.

56. Epstein knowingly and intentionally, through various means, participated in, perpetrated, assisted, supported, and facilitated a sex-trafficking venture that was in and affecting interstate and foreign commerce, in violation of 18 U.S.C. § 1591(a)(1).

57. At all times material hereto, Epstein, through means of force, threats of force, fraud, and/or coercion, caused Doe to engage in commercial sex acts.

58. Specifically, Doe was forced to engage in commercial sex acts with Epstein in New York City and Paris, France. The commercial sex acts were organized, coordinated and facilitated from New York by Epstein and his co-conspirators.

59. As a direct and proximate result of Epstein's knowing and intentional violations of 18 U.S.C. §§ 1591(a)(1), 1595, Doe has in the past suffered, and in the future will continue to suffer, physical injury, pain, emotional distress, psychological trauma, mental anguish, humiliation, embarrassment, loss of self-esteem, loss of dignity, invasion of her privacy, and a loss of her capacity to enjoy life, as well as other damages. These injuries are permanent in nature and Doe will continue to suffer these losses in the future.

60. By virtue of these knowing and intentional violations of 18 U.S.C. §§ 1591(a)(1), 1595, Epstein is liable to Doe for the damages she sustained and reasonable attorneys' fees.

61. Any statute of limitations applicable to Doe's claims, if any, is tolled due to the continuous and active deception, duress, threats of retaliation, and other forms of misconduct that Epstein and his co-conspirators used to silence his many victims, including Doe.

62. Epstein is equitably estopped from asserting a statute of limitations defense. Allowing Epstein to do so would be unjust.

## SECOND CAUSE OF ACTION

### (Knowing Beneficiary in a Sex-Trafficking Venture in Violation of the Trafficking Victims Protection Act, 18 U.S.C. §§ 1591(a)(2), 1595)

63. Doe repeats and re-alleges the allegations stated above in paragraphs 1–54 as if fully set forth herein.

64. Epstein knowingly and intentionally benefitted, financially and by receiving value, from participation in, perpetration of, assistance of, support of, and facilitation of a sex-trafficking venture that was in and affecting interstate and foreign commerce, together and with others, in violation of 18 U.S.C. § 1591(a)(2).

65. Epstein took many concrete steps to lead, participate, and aid his sex trafficking venture. Among those steps, Epstein knowingly and intentionally recruited, enticed, provided, obtained, advertised, and solicited by various means Doe, knowing that he would use force, threats of force, fraud, coercion, and a combination of such means to cause Doe to engage in commercial sex acts.

66. Among the concrete steps Epstein took to participate in and aid his sex trafficking venture, Epstein engaged an enterprise of lawyers, accountants, and business services to assist him in creating sham companies to hide cash for the trafficking and with the withdrawal of large sums of cash to facilitate the trafficking. Epstein would use cash and financial support as a means of defrauding, forcing, and coercing sex acts from Doe. His conduct was outrageous and intentional.

67. Epstein's knowing and intentional actions were in and affecting the channels and instrumentalities of interstate and foreign commerce.

68. By taking the concrete steps alleged in this complaint, Epstein knowingly participated in sex trafficking and furthered his sex trafficking enterprise. The concrete steps constituted taking part in the sex trafficking venture and were necessary for its success. The

concrete steps constituted active engagement by Epstein in his sex trafficking venture. Epstein knew that his active engagement would lead to and cause coercive commercial sex trafficking.

69. Epstein knowingly and intentionally benefited financially from, and received value, for his participation in the sex trafficking venture. Through his sex trafficking venture, Epstein abused hundreds of young females for himself for sex and also lent these females out to other powerful and wealthy individuals to be sexually abused. Epstein's participation in his sex trafficking venture allowed him to expand his vast connections to powerful individuals, and seemingly unlimited wealth and resources, to create a web of transcontinental sex trafficking that served himself, his co-conspirators, and some of the most powerful people in the world.

70. As a direct and proximate result of Epstein's knowing and intentional violations of 18 U.S.C. §§ 1591(a)(2), 1595, Doe has in the past suffered, and in the future will continue to suffer, physical injury, pain, emotional distress, psychological trauma, mental anguish, humiliation, embarrassment, loss of self-esteem, loss of dignity, invasion of her privacy, and a loss of her capacity to enjoy life, as well as other damages. These injuries are permanent in nature and Doe will continue to suffer these losses in the future.

71. Epstein's knowing and intentional violations of 18 U.S.C. §§ 1591(a)(2), 1595, have caused Doe harm that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity, in order to avoid incurring that harm.

72. By virtue of these knowing and intentional violations of 18 U.S.C. §§ 1591(a)(2), 1595, Epstein is liable to Doe for the damages she sustained and reasonable attorneys' fees.

73.  Any statute of limitations applicable to Doe's claims, if any, is tolled due to the continuous and active deception, duress, threats of retaliation, and other forms of misconduct that Epstein and his co-conspirators used to silence his many victims, including Doe.

74.  Epstein is equitably estopped from asserting a statute of limitations defense. Allowing Epstein to do so would be unjust.

## THIRD CAUSE OF ACTION

### (Battery)

75.  Plaintiff Doe repeats and re-alleges the allegations stated above in paragraphs 1–54 as if fully set forth herein.

76.  Epstein intentionally committed battery by sexually assaulting Doe when she was a young woman. As described above, on multiple occasions, Epstein intentionally sexually assaulted and touched Doe in an offensive and sexual manner without her consent.

77.  Epstein's actions constitute sexual offenses as defined in New York Penal Law Article 130 inasmuch as Epstein sexually assaulted Doe by forcible compulsion. See N.Y. C.P.L.R. § 213-C.

78.  As a direct and proximate result of Epstein's conduct, Doe has in the past and will in the future continue to suffer extreme emotional distress, humiliation, fear, psychological trauma, loss of dignity and self-esteem, and invasion of her privacy.

79.  Any statute of limitations applicable to Doe's claims, if any, is tolled due to the continuous and active deception, duress, threats of retaliation, and other forms of misconduct that Epstein and his co-conspirators used to silence his many victims, including Doe.

80.  Epstein is equitably estopped from asserting a statute of limitations defense. Allowing Epstein to do so would be unjust.

## FOURTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

81. Doe repeats and re-alleges the allegations stated above in paragraphs 1–54 as if fully set forth herein.

82. As a direct result of these allegations as stated, Epstein committed intentional infliction of emotional distress against Doe.

83. Epstein's actions, described above, constitute extreme and outrageous conduct that shocks the conscience. Epstein's plan to recruit, entice, and assault Doe on multiple occasions goes beyond all possible bounds of decency and is intolerable in a civilized community.

84. Epstein knew or disregarded the substantial likelihood that these actions would cause Doe severe emotional distress.

85. As a direct and proximate result of Epstein's conduct, Doe has in the past and will in the future continue to suffer extreme emotional distress, humiliation, fear, psychological trauma, loss of dignity and self-esteem, and invasion of her privacy.

86. Any statute of limitations applicable to Doe's claims, if any, is tolled due to the continuous and active deception, duress, threats of retaliation, and other forms of misconduct that Epstein and his co-conspirators used to silence his many victims, including Doe.

87. Epstein is equitably estopped from asserting a statute of limitations defense. Allowing Epstein to do so would be unjust.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants, awarding her compensatory, consequential, and exemplary damages in an amount to be determined at trial; costs of suit; attorneys' fees; and such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all causes of action asserted within this pleading.

Dated: September 11, 2025

Respectfully submitted,

*/s/ David Boies*

David Boies
Boies Schiller Flexner LLP
55 Hudson Yards
New York, NY
Telephone: (212) 446-2300
Facsimile:  (212) 446-2350
Email: dboies@bsfllp.com

Sigrid S. McCawley
Boies Schiller Flexner LLP
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33316
Telephone: (954) 356-0011
Facsimile:  (954) 356-0022
Email: smccawley@bsfllp.com