**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JANE DOE 4,

Plaintiff, CASE NO: 1:25-cv-07570-JGK

v.

DARREN K. INDYKE and RICHARD D. KAHN, in their capacities as executors of the ESTATE OF JEFFREY EDWARD EPSTEIN,

Defendants.

---

**PLAINTIFF JANE DOE 4'S REPLY MEMORANDUM IN SUPPORT OF HER MOTION FOR LEAVE TO PROCEED ANONYMOUSLY**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

I. Doe's Interest in Anonymity Strongly Favors Allowing Her to Proceed Anonymously. .. 3

II. Defendants Will Not Suffer Any Prejudice if Doe Proceeds Anonymously. ........ 7

III. The Public Does Not Have an Interest in Knowing Doe's Identity. ........ 8

IV. Full Anonymity Is Doe's Only Method to Proceed in this Case. ........ 9

CONCLUSION ........ 9

# TABLE OF AUTHORITIES

**Cases**

*Doe 1 v. United States*,
2024 WL 3738626 (S.D.N.Y. Aug. 8, 2024) ........ 3

*Doe 107 v. Giuffre*,
2023 WL 4926195 (2d Cir. Aug. 2, 2023) ........ 5

*Doe 3 v. Indyke*,
2024 WL 4299757 (S.D.N.Y. Sept. 26, 2024) ........ 2, 3

*Doe No. 2 v. Kolko*,
242 F.R.D. 193 (E.D.N.Y. 2006) ........ 1, 5, 8

*Doe v. Burns*,
2023 U.S. Dist. LEXIS 246693 (D.D.C. Oct. 5, 2023) ........ 8

*Doe v. Combs*,
2024 WL 863705 (S.D.N.Y. Feb. 29, 2024) ........ 6, 8

*Doe v. Cruz*,
2024 WL 1465928 (S.D.N.Y. Apr. 4, 2024) ........ 1, 3

*Doe v. Evans*,
202 F.R.D. 173 (E.D. Pa. 2001) ........ 8

*Doe v. Jarecki*,
2024 U.S. Dist. LEXIS 103808 (S.D.N.Y. June 11, 2024) ........ passim

*Doe v. JP Morgan Chase Bank, N.A.*,
742 F. Supp. 3d 387 (S.D.N.Y. 2024) ........ 3

*Doe v. Neverson*,
820 F. App'x. 984 (11th Cir. Jul. 30, 2020) ........ 4

*Doe v. Shakur*,
164 F.R.D. 359 (S.D.N.Y. 1996) ........ 6

*Doe v. Smith*,
105 F. Supp. 2d 40 (E.D.N.Y. 1999) ........ 6

*Doe v. Telemundo Network Grp. LLC*,
2023 WL 6259390 (S.D.N.Y. Sept. 26, 2023) ........ 9

*Doe v. United States*,
732 F. Supp. 3d 291 (S.D.N.Y. 2024) ........ 2

*Doe v. Weinstein*,
484 F. Supp. 3d 9 (S.D.N.Y. 2020) ........ 9

*Rapp v. Fowler*,
537 F. Supp. 3d 521 (S.D.N.Y. 2021) ........ 8, 9

*Sealed Plaintiff v. Sealed Defendant*,
537 F.3d 185 (2d Cir. 2008) ........ 2

**Other Authorities**

Stephen Collinson, *In the Epstein scandal, like other Washington Storms, the victims are an afterthought*, CNN (Aug. 1, 2025), http://cnn.com/2025/08/01/politics/giuffre-epstein-victims-lewinsky-levy-analysis ........ 8

Plaintiff Jane Doe 4, by her undersigned attorneys, respectfully submits this reply memorandum of law in support of her motion for leave to proceed anonymously.

## INTRODUCTION

This lawsuit arises out of Jeffrey Epstein's years-long sexual abuse of Doe while she was a young woman. As a victim of the world's most notorious sex trafficker and a resident of a Muslim-majority, culturally conservative country in Central Asia where she faces a serious risk of retaliatory harm if her identity is disclosed, Doe's interests in proceeding anonymously could not be more substantial. The conduct at issue in this litigation—the trafficking and abuse of Doe by Epstein—is undoubtedly highly sensitive and personal. Indeed, "sexual assault victims are a paradigmatic example of those entitled to a grant of anonymity." *Doe v. Cruz*, 2024 WL 1465928, at *2 (S.D.N.Y. Apr. 4, 2024) (quoting *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006)). And the media's obsession with Epstein's crimes, his wealthy and powerful network of co-conspirators, and his victims has created a particular risk of retaliation and threat to Doe's physical, psychological, and emotional well-being if her identity is revealed. Doe's need to remain anonymous is also corroborated by expert psychologist, Dr. Chitra Raghavan. *See* Ex. A, Raghavan Decl.

Following their new strategy to intimidate Epstein's victims and pressure them into dropping their cases, Defendants are once again opposing a plaintiff's motion to proceed anonymously in an attempt to evade justice. *See Doe 3 v. Indyke et al.*, 1:24-cv-01204-AS

(S.D.N.Y. Aug. 12, 2024), Dkt. 81 (motion for the disclosure of plaintiff's identity).[1] Like in that case, the Court should reject this blatant intimidation tactic.

Numerous courts in this district, including this Court, have permitted victims of sexual assault to proceed under pseudonyms. *See* Dkt. 10 at 1–2 (citing *Doe v. Simmons*, 1:24-cv-01043, Dkt. 9 (Koeltl, J.)) (other citations omitted). This is especially true where, as here, plaintiffs have submitted medical corroboration detailing the risks of disclosure.[2] After weighing the factors outlined in *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189–90 (2d Cir. 2008), the majority of courts in the Second Circuit have concluded that victims of Epstein can proceed anonymously. *See Doe v. Jarecki*, 2024 U.S. Dist. LEXIS 103808, at *4–6 (S.D.N.Y. June 11, 2024); *Doe 3 v. Indyke*, 2024 WL 4299757, at *1, *5 (S.D.N.Y. Sept. 26, 2024).[3]

---

[1] In the Defendants' opposition to Jane Doe 3's motion to proceed anonymously in her individual case, they acknowledged "the sensitive and serious issues raised by disclosure of the identities of alleged sex-trafficking victims," noting "they have never opposed an application by a plaintiff alleging individual harm to proceed anonymously against the Epstein Estate." *Doe 3 v. Indyke et al.*, 1:24-cv-02192-AS (S.D.N.Y. Apr.10, 2024), Dkt. 16. Apparently now, in an increasingly desperate effort to bury the reality of the abhorrent abuses their client committed, the Co-Executors' position has changed.

[2] As discussed below, in the majority of the cases defendants cite where courts did not permit victims of sexual abuse to proceed anonymously, plaintiffs did not have corroboration from medical professionals.

[3] The only case in this district where a court has concluded that Epstein victims could not proceed anonymously. *Doe v. United States*, 732 F. Supp. 3d 291 (S.D.N.Y. 2024), is distinguishable on

The balance of the *Sealed Plaintiff* factors that govern whether a plaintiff can proceed anonymously weighs in Doe's favor.

## I. Doe's Interest in Anonymity Strongly Favors Allowing Her to Proceed Anonymously.

Courts have concluded that the first factor—whether the litigation involves matters that are highly sensitive and of a personal nature—weighs heavily in favor of victims of sexual abuse who seek to proceed anonymously. *See Cruz*, 2024 WL 1465928, at *2; *Indyke*, 2024 WL 4299757, at *1; *cf. Doe v. JP Morgan Chase Bank, N.A.*, 742 F. Supp. 3d 387, 397 (S.D.N.Y. 2024) (denying request to unseal testimony of Epstein survivor "[g]iven the specific, graphic detail of the alleged non-consensual activity that Doe describes"). Even Defendants' cases recognize that this factor weighs in Doe's favor.[4]

---

its facts. The plaintiffs there did not face the same particular risk of retaliatory harm that Doe faces here because she is from a Muslim family and resides in a Muslim-majority country. Further, Doe's allegations of potential harm, including the potential for harm to her physical safety, are not "speculative"—they are corroborated by a professional psychologist. While the plaintiffs in *Doe v. United States* submitted a declaration from a medical professional in support of their renewed motion, the doctor who submitted the declaration had never met with any of the plaintiffs. *Doe 1 v. United States*, 2024 WL 3738626, at *3 (S.D.N.Y. Aug. 8, 2024).

[4] Courts have permitted victims of sexual abuse to proceed anonymously even where they are not minors now and were not minors at the time of the alleged abuse. *See Indyke*, 2024 WL 4299757, at *6; *Jarecki*, 2024 U.S. Dist. LEXIS 103808, at *4–6. And Doe had barely reached the age of majority when she was first abused by Epstein at the age of 18. Ex. A at ¶ 3.

The second factor, which concerns the risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, innocent third parties, also weighs heavily in Doe's favor. To start, courts have credited the claims of victims of Epstein and his associates who have alleged they are "at serious risk of retaliatory harm" because Epstein and his associates possess "tremendous wealth and power and has demonstrated a clear ability to cause her serious harm." *Jarecki*, 2024 U.S. Dist. LEXIS 103808, at *4. In declining to unseal grand jury materials from Epstein's federal criminal case, Judge Berman found that "possible threats to victims' safety and privacy" was a "compelling reason" for denying the Government's request. *See United States v. Epstein*, 1:19-cr-00490-RMB, Dkt. 77 at 8.

Defendants' claim that none of the women who have spoken out against Epstein "have reported experiencing any retaliation" is unfounded and completely wrong. The public obsession with Epstein, in part because of his far-reaching connections to powerful and wealthy individuals, has led to serious retaliatory physical and mental harm for his victims. Indeed, the lives of Epstein's victims have been "destroyed by media notoriety" as they have "endured decades of torment." Stephen Collinson, *In the Epstein scandal, like other Washington Storms, the victims are an afterthought*, CNN (Aug. 1, 2025), http://cnn.com/2025/08/01/politics/giuffre-epstein-victims-lewinsky-levy-analysis.

Doe also faces a particular risk of retaliatory harm as the member of a Muslim family who was raised in a tightly knit conservative Muslim community. *See* Ex. A at ¶ 9; *Doe v. Neverson*, 820 F. App'x. 984, 988 (11th Cir. Jul. 30, 2020) (reversing a denial of a motion to proceed anonymously where "Ms. Doe does not just allege that the sexual assault allegations in this case might result in 'personal embarrassment.' Instead, she asserts that because she is from a 'devout Muslim family,' the 'very nature of her allegations would be sufficient to bring harm to [herself]

and shame to her family under the cultural/religious traditions that her family practices'"); *Kolko*, 242 F.R.D. at 197 ("[T]he specific evidence plaintiff has submitted supporting his claim of emotional and psychological harm, particularly in light of his ties to a very tight-knit religious community, is sufficient standing alone to establish special circumstances warranting anonymity."). Dr. Raghavan's declaration explains that Doe has legitimate fears that she will shame her family and face ostracization if her identity as a victim of Epstein is revealed. Ex. A. at ¶ 9. Dr. Raghavan further explains that due to the media sensationalizing sexual scandal in Doe's home country—and there is a particular risk of that happening here given the media phenomenon surrounding the Epstein case—Doe would be "a target of … conservative Muslim scorn." *Id.* at ¶ 11.

Doe also faces a particular risk of retaliation, and the potential that her physical safety and that of her child will be at risk, due to the conditions in her home country. Ex. A at ¶¶ 7–8. In *Doe 107 v. Giuffre*, 2023 WL 4926195, at *1 (2d Cir. Aug. 2, 2023), the Second Circuit found that the district court abused its discretion by concluding that the presumption of public access outweighed the risk of identifying Doe 107, where doing so "could place her in mortal danger in her culturally conservative home country" in which "'honor' killings are a real risk." Dr. Raghavan explains how Doe's physical safety could be at risk if her identity is revealed due to the conditions in her home country. Ex. A at ¶ 7. Indeed, sexual purity is associated with family honor in Doe's home country and femicide—that is, the killing of women who are seen to be morally impure—occurs in a context where women are often blamed for the violence, and perpetrators can receive light sentences for their crimes. *Id.*

Accordingly, Doe's claims of retaliatory harm are far from conclusory, as Defendants claim. Rather, she "has presented particularized and undisputed evidence that proceeding publicly

would seriously threaten her mental health, requiring her to choose between dropping her action and placing her life in jeopardy." *Doe v. Smith*, 105 F. Supp. 2d 40, 44 (E.D.N.Y. 1999). And this is corroborated by the sworn testimony of an expert psychologist who has personally examined her. Defendants cite *Doe v. Shakur*, 164 F.R.D. 359, 362 (S.D.N.Y. 1996), but there, the plaintiff argued that disclosure of her name would cause "humiliation and embarrassment" without corroboration. Similarly, in *Doe v. Combs*, 2024 WL 863705, at *4 (S.D.N.Y. Feb. 29, 2024), the plaintiff merely claimed "generally and without corroboration that she [would] suffer trauma." Those cases lack the corroboration that Doe's claims have here.

Defendants do not directly address the third factor, whether identification presents other harms and the likely severity of those harms. This factor also clearly weighs in Doe's favor. "The nature of the allegations make it logical to conclude at this early stage that disclosure of Doe's identity would cause further psychological harm to Doe which is the precise harm this litigation seeks, in part, to redress." *Jarecki*, 2024 U.S. Dist. LEXIS 103808, at *2 (citing *Doe v. Indyke*, No. 19 Civ. 7771 (S.D.N.Y. Sept. 12, 2019), Dkt. 28 at 2) (alterations omitted). As Dr. Raghavan's sworn declaration details, "Doe's psychological distress resulting from the sexual abuse would be exacerbated by disclosure of her identity." Ex. A at ¶ 5. This includes a "complex constellation of mood disorder, eating disorder, trauma, and dissociative disorders" which are "particularly associated with sexual trauma and captive abuse, both of which Jane Doe experienced." *Id.* at ¶ 4. Defendants disregard that Epstein's crimes and victims have been sensationalized by the media, leading to heavy scrutiny by the public, increasing the likely severity of harm that Doe will experience if her identity is revealed. *Id.* at ¶¶ 11–12. The combination of factors one through four weigh heavily in favor of permitting Doe to proceed anonymously.

## II. Defendants Will Not Suffer Any Prejudice if Doe Proceeds Anonymously.

Defendants' argument under factor six that they will face an asymmetry in discovery if Doe is permitted to proceed anonymously is entirely speculative. The only specific information Defendants claim they could garner from potential witnesses who *could* come forward if Doe is publicly identified is whether Doe was engaging in "recruitment activities." Doe vehemently disputes that she was ever a recruiter for Epstein. In any event, revealing Doe's identity is not the only mechanism that Defendants have to test their unfounded theory. They will have ample ability to investigate Doe's claims during discovery. Through interrogatories, documents, Doe's testimony, and relevant and proportionate third-party discovery, they will have plenty of chances to probe whether she was a "co-conspirator" of Epstein. Moreover, they offer no explanation for why any evidence that Doe recruited other victims would be relevant.

Doe has already demonstrated a willingness to cooperate with Defendants by agreeing to reveal her identity promptly after the Court entered a Protective Order ensuring her identity would remain confidential. Defendants claim that Doe failed to respond to Defendants' attempts to provide her name so that Defendants could prepare their response. This is inaccurate and misleading. The parties met and conferred and decided on a procedure for providing Doe's identity to Defendants on September 19, 2025. Defendants sent a proposed Protective Order on September 24[5] and counsel for Doe responded less than 48 hours later. Doe promptly provided Defendants with Doe's name after the Court entered the Protective Order on September 30. Doe is committed

[5] In Defendants' correspondence, they gave no indication to Doe that they urgently needed to know her identity to prepare their opposition. To the contrary, they indicated that they would "agree not to object to the motion now given that [they] intend to move to dismiss Jane Doe 4's claims[.]"

to cooperating with Defendants to ensure they will not be prejudiced by her anonymity during discovery.

Further, there is no legitimate risk of reputational harm to Defendants as there was in the cases Defendants cite. *See Rapp v. Fowler*, 537 F. Supp. 3d 521, 531 (S.D.N.Y. 2021) and *Combs*, 2024 WL 863705, at *4. There is no serious risk of reputational damage here where there is no doubt that Epstein committed heinous crimes, and he is dead.

**III. The Public Does Not Have an Interest in Knowing Doe's Identity.**

The public interest does not favor revealing Doe's identity. Defendants claim that the interest in protecting sexual abuse identities must be weighed against the interest of the accused to be able publicly to confront the accuser and the interest in transparency. Whatever weight that these amorphous interests may carry in other cases, the balance clearly tips in Doe's favor here. Not only is the accused (Epstein) deceased, but also the risks to Doe's physical and emotional safety if her identity is revealed are particularized and extremely serious. And though one judge may have found that there is a public interest in the identities of Epstein's accusers, others have concluded that the public's interest in protecting the identities of sexual assault victims is far stronger. *Kolko*, 242 F.R.D. at 195; *see also Jarecki*, 2024 U.S. Dist. LEXIS 103808, at *2 ("[W]hile there may be 'public interest in th[is] litigation because of the notoriety of Epstein and those with whom he associated . . . disclosure of the identity of the plaintiff is not likely to be of a legitimate importance or benefit to the public.'") (citing *Indyke*, Dkt. 28 at 4.). Indeed, courts have recognized that the public has a strong interest in *protecting* the identities of sexual assault victims so that other victims will not be deterred from reporting these crimes. *Kolko*, 242 F.R.D. at 195 (citing *Doe v. Evans*, 202 F.R.D. 173, 176 (E.D. Pa. 2001)); *Doe v. Burns*, 2023 U.S. Dist. LEXIS 246693, at *6 (D.D.C. Oct. 5, 2023)

Defendants cite *Doe v. Telemundo Network Grp. LLC*, 2023 WL 6259390, at *7 (S.D.N.Y. Sept. 26, 2023), but that case is readily distinguishable. There, the Court recognized that the plaintiff was a "respected athlete and television personality." Similarly, in *Doe v. Weinstein*, 484 F. Supp. 3d 90, 97 (S.D.N.Y. 2020), the Court recognized that there was a public interest in the identities of Weinstein's accusers because some of them are "public figures." Doe is not a public figure—she is a foreign woman who has maintained a private life and has never revealed to anyone that she is a victim of Epstein. Doe's privacy also distinguishes this case from *Fowler*, 537 F. Supp. 3d at 529, where the plaintiff had "spoken since the 1990s to an unknown number of people about his 'relationship' with Spacey."[6]

### IV. Full Anonymity Is Doe's Only Method to Proceed in this Case.

Defendants argue that less drastic remedies than anonymity, such as redactions, could be adequate to protect Doe. This is not the case. There are no redactions that could prevent the risks to Doe's physical safety if her name is revealed in connection with this lawsuit. She does not merely allege that she will be humiliated if the details of her sexual assaults are revealed—threats to her safety will follow from any association with the claims and Epstein. Ex. A at ¶¶ 7–8.

## CONCLUSION

For the forgoing reasons, Doe respectfully requests that the Court grant her motion to proceed anonymously.

---

[6] Neither the private nature of this suit (fifth factor) nor the factual nature of the issues (ninth factor) is dispositive to the issue of pseudonymity—otherwise, plaintiffs in private suits involving claims of sexual assault would never be able to proceed anonymously.

Dated: October 3, 2025

Respectfully submitted,

*/s/ David Boies*

David Boies
Andrew Villacastin
Boies Schiller Flexner LLP
55 Hudson Yards
New York, NY
Telephone: (212) 446-2300
Facsimile: (212) 446-2350
Email: dboies@bsfllp.com
Email: avillacastin@bsfllp.com

Sigrid S. McCawley
(Lead Trial Counsel)
Boies Schiller Flexner LLP
401 E. Las Olas Blvd. Suite 1200
Fort Lauderdale, FL 33316
Telephone: (954) 356-0011
Facsimile: (954) 356-0022
Email: smccawley@bsfllp.com

**CERTIFICATE OF COMPLIANCE**

Pursuant to Section III.D of the Individual Practices of Judge John G. Koeltl, I hereby certify that the memorandum of law in support of Doe's motion and the foregoing reply memorandum of law in support of her motion comply with the formatting rules and word count requirements. Exclusive of the cover page, certification of compliance, table of contents, and table of authorities in compliance with the word count limit under Section III.D, the memorandum of law in support of Doe's motion contained 2,326 words and the foregoing reply brief contains 2,767 words.

*/s/ David Boies*
David Boies